UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|    JEANNE F. REID | ) | Case No. 08-13200-SSM |
| | ) | Chapter 11 |
|                  Debtor | ) | |
| | ) | |
| JEANNE F. REID | ) | |
| | ) | |
|                  Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 08-1539 |
| | ) | |
| WELLS FARGO BANK, N.A. | ) | |
| | ) | |
|                  Defendant | ) | |

**MEMORANDUM OPINION**

Before the court is the motion of the defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), to dismiss the complaint—which seeks to rescind a residential mortgage based on alleged violations of the Truth in Lending Act—for improper service and for failure to state a claim for relief. A hearing was held on April 7, 2009. Wells Fargo was present by counsel. Although given notice of the motion and the hearing, the plaintiff did not file a response and did not appear. Wells Fargo agreed to waive its objection to service, and the court, after hearing argument on the failure to state a claim for relief, took the motion to dismiss under advisement. For the reasons stated, the court agrees that the complaint must be dismissed for failure to state a claim for relief.

1

Background

The plaintiff, Jeanne F. Reid (sometimes referred to in this opinion as "the debtor"), filed a voluntary petition in this court on June 4, 2008, for reorganization under chapter 11 of the Bankruptcy Code.  She remains in possession of her estate as debtor in possession.  Among the assets listed on her schedules is a single family house located at 7240 Evans Mill Road, McLean, Virginia.  The property is valued on her schedules at $897,500, subject to a deed of trust in favor of "Option One Mortgage" in the amount of $844,887.21.  A proof of claim was filed by Wells Fargo in the principal amount of $844,887.21 plus prepetition arrears of $50,288.16.  According to the proof of claim, the current interest rate on the note is 8% and the current monthly payment is $6,714.72.[1]

Approximately three months after the petition was filed, Wells Fargo brought a motion for relief from the automatic stay, alleging that the debtor had not made any post-petition payments.  In a memorandum opinion and order, the court observed that the plan filed by the debtor proposed to <u>rescind</u> the mortgage loan and to repay the principal, without interest, over a ten-year period.  *Wells Fargo Bank v. Reid (In re Reid),* No. 08-13200 (Bankr. E.D. Va., December 12, 2008).  Attached to the plan is a copy of a "Notice of Rescission" dated November 6, 2008, and addressed to Wells Fargo, stating, "Due to violations of the Truth-In-Lending

---

[1] A copy of the note was not attached to the proof of claim but was attached to the motion for relief from the automatic stay that Wells Fargo subsequently filed.  The note is dated December 20, 2006, and is payable to H&R Block Mortgage Corporation in the original principal amount of $848,000.  The initial interest rate is fixed at 8% for 3 years, after which it adjusts every six months to 6.2 percentage points over the London Interbank Offered Rate (LIBOR), subject to certain caps, among them a maximum rate of 14% and a minimum rate of 6.2%.  The term of the note is 30 years, with a 40-year amortization, and the initial monthly payment of principal and interest is $5,896.24.

Act . . . you are hereby notified, that . . . the loan is hereby rescinded." After considering whether such a rescission could be accomplished solely through the plan confirmation process, the court concluded that the better practice would be to require the debtor to bring an adversary proceeding to enforce her claimed right of rescission. The court continued the automatic stay in effect conditioned upon the debtor filing an appropriate adversary proceeding, obtaining seasonable confirmation of her plan, and making monthly good-faith payments to the creditor pending confirmation in the amount proposed by the plan.

The present action was filed on December 29, 2008, and was served on the attorney who had represented Wells Fargo in the motion for relief from the automatic stay. It alleges that in connection with a March 17, 2006, loan made by New Century Mortgage Corp. in the amount of $700,000 to refinance an existing mortgage against the property, she was not provided with accurate material disclosures, as required by the Truth in Lending Act, in that a preliminary Good Faith Estimate given to her by the lender on February 16, 2006, listed a "Loan Origination Fee" of $14,000, but no loan discount fee, while the final Good Faith Estimate (which she apparently received at the settlement table) listed a Loan Origination Fee of $20,125.00, which however was shown on the settlement statement (Form HUD-1) not as a loan origination fee but as "Loan Discount 2.8750%" in the amount of $20,125.00. In response, Wells Fargo filed the motion to dismiss that is currently before the court.

Discussion

I.

A complaint may be dismissed at the outset of the litigation if it fails to state a claim upon which relief may be granted. Fed.R.Bankr.P. 7012(b); Fed.R.Civ.P. 12(b)(6). As the Supreme

Court has cautioned, however, "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Additionally, "it is well established that, in passing on a motion to dismiss . . . for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Id.* At the same time, the plaintiff must provide grounds for entitlement to relief, which requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In the present case, Wells Fargo argues that the complaint fails to state a claim for relief because the attempted rescission occurred more than three days after the loan transaction closed and the rescission period was not extended to the three years the statute potentially allows when the lender fails to provide accurate disclosures because, even accepting the allegations of the complaint as true, a material inaccuracy does not exist solely because loan terms change between the time a preliminary Good Faith Estimate is furnished and the loan is closed or because a component of the finance charge—otherwise accurate as to dollar amount—is mislabeled as a loan origination fee rather than a loan discount fee.

II.

The Truth In Lending Act, 15 U.S.C. § 1601 et seq., has as its purpose "to assure a *meaningful disclosure of credit terms* so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a) (emphasis added). To this end,

4

various disclosures are required of lenders in connection with consumer credit transactions.  15 U.S.C. §§ 1631-1632; Regulation Z, Board of Governors of the Federal Reserve System, 12 C.F.R. Part 226.  Failure to provide the required disclosures subjects the lender to an award of actual and statutory damages and reasonable attorney's fees, for which, however, there is a one-year statute of limitation.  15 U.S.C. § 1640.  If, in connection with the transaction, a security interest will be retained or acquired in property that is the borrower's "personal dwelling," the borrower has until midnight of the third business day following the consummation of the transaction or the delivery of the required disclosure and notice of right to rescind to rescind the loan.  15 U.S.C. § 1635(a).  However, the right of rescission is extended for up to 3 years after the date of the consummation of the transaction if proper disclosures and notices were not given.  15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).[2]  Upon rescission, the lender is required to release any security interest, and the borrower is required to tender repayment of the funds advanced, less any payments already made.  15 U.S.C. § 1635(b); *Powers v. Sims & Levin*, 542 F.2d 1216, 1220 (4th Cir. 1976).

A.

As an initial matter, the court observes that the mortgage loan the debtor is seeking to rescind is not the mortgage loan under which Wells Fargo is claiming.  The New Century loan

---

[2]  The cited portion of Regulation Z specifically provides as follows:

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last.  If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.

that is the subject of the complaint was made on March 17, 2006, in the amount of $700,000. The H & R Block loan under which Wells Fargo claims was made some 9 months later on December 20, 2006, in the amount of $848,000, which presumably paid off the New Century note. It is far from clear how a borrower can rescind a mortgage loan transaction simply because proper disclosures were not made in connection with a *prior* mortgage that the new mortgage paid off. The court is aware that a number of courts have held that rescission remains available as a remedy under the Truth in Lending Act even when the loan has already been refinanced. *See*, *e.g., Wiggins v. AVCO Fin. Svcs.,* 62 F.Supp.2d 90, 93 n.3 (D. D.C. 1999); *Abele v. Mid-Penn Consumer Discount,* 77 B.R. 460, 467 (E.D. Pa. 1987); *contra King v. California*, 784 F.2d 910, 913 (9th Cir. 1986). In *Wiggins*, however, rescission merely allowed recovery of the finance and other charges with respect to the rescinded loan, not the invalidation of the subsequent loan. And in *Abele*, the refinances were with the same lender who made the rescinded loans. In any event, Wells Fargo has not raised the issue in its motion to dismiss, and at this point the court will simply assume, without deciding, that inaccurate material disclosures in connection with the New Century loan would allow rescission of the current loan.

B.

Under the Truth in Lending Act (TILA) and Regulation Z, the required "material disclosures" are defined specifically as "the disclosure . . . of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, [and] the due dates or periods of payments scheduled to repay the indebtedness." 15 U.S.C. § 1602(u); see 12 C.F.R. § 226.23(a)(3) n.48. In this case, the

debtor alleges that New Century failed to provide material disclosures based on (1) the discrepancy between the preliminary Good Faith Estimate ("GFE") and the subsequent disclosures, and (2) the different labeling of the $20,215.00 fee on the final GFE and the settlement agreement.

     1. <u>Discrepancy between the preliminary and final GFE</u>

The court agrees with Wells Fargo that the discrepancy between the preliminary GFE and the final GFE does not give rise to a TILA violation. The statute provides, "If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part." 15 U.S.C. §1634. Section 226.17 of Regulation Z also provides that "if a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosure, the inaccuracy is not a violation of this regulation, although new disclosures may be required." 12 C.F.R. § 226.17(e). Courts have held that a discrepancy between two disclosures does not by itself extend a borrower's right of rescission to three years. *See Lynch v. RKS Mortg. Inc.*, 588 F.Supp.2d 1254, 1259 (E.D. Cal. 2008) (holding that variance between two disclosures did not violate the TILA where the final disclosure accurately set forth the terms of the loan); *In re McNinch*, 250 B.R. 848, 853-56 (Bankr. W.D. Pa. 2000) (discrepancy between two disclosures is not per se evidence of TILA violations).

In this case, because the Lender made subsequent disclosures on March 17, 2006, any inaccuracy in the earlier preliminary GFE was corrected. As in *Lynch* and *McNinch*, the court therefore concludes that the discrepancy between the preliminary GFE and the final disclosures

does not constitute a failure to provide required disclosures and therefore does not extend the debtor's right of rescission to three years.

      2. <u>Inconsistent labeling of the $20,125.00 fee on the final GFE and the HUD-1 Form</u>

As noted, the complaint alleges that the labeling of the $25,125 fee as a loan origination fee on the GFE and as a loan discount fee on the HUD-1 form constitutes a failure to provide required disclosures under the Truth in Lending Act. Unlike the difference between the preliminary and final GFE, the difference between the final GFE and the Uniform Settlement Statement (HUD-1 Form) cannot be cured based on the safe harbor for corrected disclosures, since both documents appear to have been provided to the debtor at the same time, namely at closing.[3] *See Pulphus v. Sullivan*, 2003 U.S. Dist. LEXIS 7080, 2003 WL 1964333 (N.D. Ill. April 28, 2003); *Laudani v. Tribeca Lending Corp. (In re Laudani)*, 2009 Bankr. LEXIS 98 (Bankr. D. Mass. Jan. 16, 2009); but cf. *In re Bumpers*, 2003 WL 22119929 (N.D. Ill. Sep 11, 2003) (finding *Pulphus* unpersuasive and that inconsistent disclosures provided simultaneously at closing did not violate TILA when they were not provided by the same party). In *Pulphus*, an elderly unsophisticated consumer alleged that a lender, by providing her with two contradictory disclosures, in essence, "gave her none." 2003 U.S. Dist. LEXIS 7080, at *37; 2003 WL 1964333, at *13. Allowing the debtor to extend her rescission right to three years, the court noted that the lender could not rely on the regulation allowing corrections to early disclosures because the borrower had alleged that she received two contradictory disclosure statements

---

[3] To be sure, the complaint does not expressly allege that both documents were provided at the same time, but that timing nevertheless seems fairly implied and would correspond to the usual practice. Accordingly, the court will assume, at least for the purpose of this motion, that the debtor received the final GFE and the HUD-1 form at the same time.

simultaneously, not successively. *Id.* However, *Pulphus* involves a fraud penetrated by a third party, who might have been an agent of the lender; and the borrower was not provided with a HUD-1 form at all. *Id.*

More to the point, the mere mislabeling of the fee does not constitute a failure to provide the material information required by the Truth in Lending Act, which is the predicate for the extended right of rescission. First, although the *amount* of the finance charge is one of the material disclosures required by TILA, neither the statute nor Regulation Z require a lender to provide an itemized breakdown of the finance charge.[4] Whether the $20,125.00 charge is labeled as "Loan Origination Fee" or "Loan Discount" does not matter,[5] as in either event the charge is simply one component of the finance charge. In a similar context, it has been held that an error in the itemization of the amount financed, while it entitled the borrower to an award of damages, did not allow rescission, because the itemization, although required, did not fall within the definition of "material" disclosures set forth at 12 C.F.R. § 226.23(a)(3) n.48. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 900 (3rd Cir. 1990). There is no allegation here that the

---

[4] *See* 15 U.S.C. §1638(a)(3). The Official Staff Commentary to Regulation Z § 226.18(d)-1 provides: "the creditor must disclose the finance charge as a dollar amount, using the term 'finance charge,' and must include a brief description similar to that in § 226.18(d). The creditor may, but need not, further modify the descriptor for variable rate transactions, with a phrase such as 'which is subject to change.' The finance charge must be shown on the disclosures only as a total amount; the elements of the finance charge must not be itemized in the segregated disclosures, although the regulation does not prohibit their itemization elsewhere."

[5] Both loan origination fees and loan discount fees are commonly referred to as "points" because they are usually expressed as a percentage of the loan amount. One information web site explains "loan origination fee" as "the amount being paid by the borrower for the ability to obtain the loan," http://realestate.about.com/od/thetransactionprocess/qt/hud_1_loan01.htm, while "loan discount fee" is defined as "a fee . . . that is paid by the Buyer to 'buy down' the interest rate." http://realestate.about.com/od/thetransactionprocess/qt/hud_1_loan02.htm.

dollar amount of the charge was not correctly stated in the documents delivered at settlement, or that the mislabeling of the fee affected the computation of the annual percentage rate, amount financed, finance charge, total payments, or payment schedule, which are the critical disclosures required by TILA.  Thus, even assuming the final GFE was incorrect in characterizing the fee as a "Loan Origination Fee," that mischaracterization did not constitute a failure to provide material disclosures within the meaning of TILA.

C.

In summary, taking the well-pleaded facts in the complaint as true, and drawing all reasonable inferences in favor of the debtor, the court cannot find that the debtor has alleged a failure to provide material disclosures, which is a necessary condition for exercising a right of rescission after the normal three-day recision period has expired.  The understatement of the finance charge on the preliminary GFE was corrected on the final GFE, and the mislabeling of the charge on the final GFE as a loan origination fee rather than a loan discount fee was not "material," because in either event it was simply a component of the finance charge and did not affect computation of the loan terms which the statute and its implementing regulation define as material.  Accordingly, the court concludes that no sufficient basis has been alleged for extending the rescission period beyond the three-day period that otherwise applies.  For that reason, the present action, which relies on a notice of rescission given nearly two years after the expiration of the three-day recision period, is barred.

A separate order will be entered granting the motion to dismiss the complaint for failure to state a claim for relief.

Date: _____  _____
                                                          Stephen S. Mitchell
Alexandria, Virginia                                   United States Bankruptcy Judge

Copies to:

Jeanne F. Reid
7240 Evans Mill Road
McLean, VA 22101
Plaintiff *pro se*

Richard Daniel Kelley, Esquire
Reed Smith LLP
3110 Fairview Park Dr. Suite 1400
Falls Church, VA 22042

Frank Bove, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314